# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| CRYSTAL COVINGTON,<br>*Plaintiff*<br><br>v.<br><br>ALEJANDRO MAYORKAS,<br>*Defendant* | §<br>§<br>§<br>§   Case No. 1:22-CV-00864-RP-SH<br>§<br>§ |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE ROBERT PITMAN
      UNITED STATES DISTRICT JUDGE

Before the Court are Defendant's Motion to Dismiss, filed February 10, 2023 (Dkt. 17); Plaintiff's Response and Rebuttal Against Defendants Motion to Dismiss & Amended Complaint, filed February 28, 2023 (Dkt. 19); and Defendant's Reply in Support of Defendant's Motion to Dismiss, filed March 8, 2023 (Dkt. 20).[1] By Text Order entered April 20, 2023, the District Court referred the Defendant's Motion to Dismiss to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas ("Local Rules").

## I.   Background

Plaintiff, a former employee of the Federal Emergency Management Agency ("FEMA"), sues the Department of Homeland Security ("DHS"), alleging that she suffered discrimination in violation of Title VII of the Civil Rights Act of 1964 and Section 501 of the Rehabilitation Act of 1973. In her Amended Complaint, Plaintiff alleges eleven instances of discrimination:

---

[1] Plaintiff also filed Plaintiff's Rebuttal Against Defendants Motion to Dismiss (Dkt. 21), but this brief is not permitted and has been given no consideration. *See* Local Rule CV-7(e)(1).

1

- Claim 1: On October 16, 2016, May 19-21, 2017, and July 23-27, 2017, FEMA failed to provide her a reasonable accommodation number to "properly remit payment for on-duty travel expenses" associated with her service animal;

- Claim 2: On June 14, 2017, Plaintiff did not receive approval for a training opportunity;

- Claim 3: On June 26, 2017, Plaintiff's supervisor requested that she be released from an on-duty assignment;

- Claim 4: On June 26, 2017, Plaintiff was released from an on-duty assignment;

- Claim 5: From July 6, 2017 to September 27, 2017, Plaintiff's supervisor "harassed, bullied, reprimanded, and scrutinized her work performance" through email;

- Claim 6: On or about July 11, 2017, Plaintiff was "harassed, bullied, reprimanded, and had her work performance scrutinized on a performance review call";

- Claim 7: On August 1, 2017, management denied Plaintiff a training opportunity;

- Claim 8: From August 10, 2017 to September 27, 2017, Plaintiff's supervisor denied her "any work assignments beyond training";

- Claim 9: From August 10, 2017 to September 27, 2017, Plaintiff was denied deployment opportunities;

- Claim 10: On August 11, 2017, Plaintiff was denied a locality pay increase; and

- Claim 11: On September 27, 2017, Plaintiff was terminated.

Dkt. 19 at 2-6. Plaintiff seeks compensatory damages, back pay, front pay, and attorney's fees.

Before suing, Plaintiff contacted an Equal Employment Opportunity Counselor on June 26, 2017, and filed a formal complaint on August 11, 2017. *Id.* at 1. She asserted the same eleven claims in the administrative proceedings as she brings in this suit. Dkt. 17-2 at 3-4. During the investigation, DHS's Office of Civil Rights and Civil Liberties ("CRCL") ordered FEMA to conduct a supplemental investigation into Plaintiff's allegations that FEMA denied her a reasonable accommodation, work assignments, deployments, and a locality pay increase, but FEMA did not do so. Dkt. 17-1 at 8. Consequently, CRCL drew an adverse inference against FEMA and found that FEMA discriminated against Plaintiff on those claims (Claims 1, 8, 9, and

10). *Id.* at 8-9. CRCL found that Plaintiff did not prove her remaining claims. *Id.* at 13. After Plaintiff appealed the decision, the Equal Employment Opportunity Commission ("EEOC") affirmed and denied her motion for reconsideration. Dkts. 17-3, 17-4. CRCL awarded Plaintiff $903.99 in pecuniary compensatory damages, $10,000 in non-pecuniary compensatory damages, and $6,285.28 in attorney's fees. Dkt. 17-5.

## II. Legal Standard

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. "A motion to dismiss for failure to state a claim concerns the formal sufficiency of the statement of the claim for relief, not a lawsuit's merits." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 582 (5th Cir. 2020) (citation omitted). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

A complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.  Analysis

As noted above, Plaintiff filed an amended complaint in response to Defendant's Motion to Dismiss. An amended complaint "supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *Raskin ex rel. JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280, 282 n.1 (5th Cir. 2023) (citation omitted). Because Plaintiff does not adopt or incorporate by reference her original complaint in her amended complaint, the Court has the option "of either denying the pending motion as moot or evaluating the motion in light of the facts alleged in the amended complaint." *Id.* The Court opts to evaluate Defendant's Motion to Dismiss based on the facts alleged in Plaintiff's amended complaint.

The Court considers these documents attached to Defendant's Motion:

1. Final Agency Decision;
2. FEMA's Supplemental Report of Investigation;
3. EEOC Decision;
4. EEOC's Decision on Request for Reconsideration; and
5. DHS's Decision on Compensatory Damages and Attorney's Fees.

Because these documents are "referred to in the plaintiff's complaint and are central to her claim," they are considered part of the pleadings. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000); *see also See Carter v. Target Corp.*, 541 F. App'x 413, 416-17 (5th Cir.

4

2013) (holding that EEOC complaints were central to plaintiff's claim and properly considered in determining whether plaintiff had stated a claim under Title VII).

### A. Plaintiff's Claims

A federal employee who receives a favorable EEOC decision can either sue in district court to enforce that decision or seek de novo review of the discrimination complaint. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.503(g); *see also Chandler v. Roudebush*, 425 U.S. 840 (1976) (holding that federal employees are entitled to trial de novo on Title VII claims). A plaintiff must seek de novo review of both the liability and remedy determinations. *Massingill v. Nicholson*, 496 F.3d 382, 384-86 (5th Cir. 2007). In other words, a plaintiff may not seek review only of the remedial award. *Id.* When the pleadings make clear that the plaintiff seeks review only of the remedial award, the claims are properly dismissed for failure to state a claim. *Coutee v. Wilkie*, No. H-19-2312, 2019 WL 6118901, at *3 (S.D. Tex. Nov. 18, 2019).

Plaintiff seeks review only of the remedial award for the claims on which she received a favorable decision. *See* Dkt. 19 at 7 (stating that Plaintiff seeks "a fair remedy" for the discrimination found by CRCL and affirmed by EEOC). Accordingly, the Court recommends that Plaintiff's claims she was denied a reasonable accommodation, work assignments, deployments, and a locality pay increase should be dismissed for failure to state a claim.[2] As to the unfavorable decisions on her claims, Plaintiff properly seeks review of both the liability and remedy determinations. *See Massingill*, 496 F.3d at 386 (holding that claim could proceed because plaintiff requested a complete trial, including a liability determination); *see also Thomas v. Geren*, 393

---

[2] Should Plaintiff move to amend her complaint and seek de novo review of both the liability determination and the remedial award, Plaintiff risks forfeiture of the damages she was awarded by CRCL. *See In re Campbell*, No. 4:21-CV-0881-P, 2022 WL 4295260, at *9 (N.D. Tex. Sept. 16, 2022) (granting summary judgment on employer's counterclaim to recover damages that plaintiff was awarded during administrative proceedings); *see also Massingill*, 496 F.3d 382, 386 (5th Cir. 2007) (recognizing employer's right to counterclaim for damages).

5

F. App'x 182, 193-94 (5th Cir. 2010) (holding that *Massingill* does not prevent plaintiffs from seeking review of only some of their claims). Plaintiff's remaining claims are:

- On June 14, 2017, Plaintiff did not receive approval for a training opportunity;
- On June 26, 2017, Plaintiff's supervisor requested that she be released from an on-duty assignment;
- On June 26, 2017, Plaintiff was released from an on-duty assignment;
- From July 6, 2017 to September 27, 2017, Plaintiff's supervisor "harassed, bullied, reprimanded, and scrutinized her work performance" through email;
- On or about July 11, 2017, Plaintiff was "harassed, bullied, reprimanded, and had her work performance scrutinized on a performance review call";
- On August 1, 2017, management denied Plaintiff a training opportunity; and
- On September 27, 2017, Plaintiff was terminated.

**B. Rehabilitation Act**

Plaintiff alleges that she suffers from "chronic anxiety" and her employment was terminated because of her disability. Dkt. 19 at 1. Defendant argues that Plaintiff has not stated a claim under the Americans with Disabilities Act ("ADA") or the Rehabilitation Act because she does not allege that she is disabled under the statutes.

The Rehabilitation Act and the ADA generally are judged under the same legal standards, and the same remedies are available under both Acts. *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010). Plaintiff's claim is properly brought under the Rehabilitation Act because she was employed by FEMA, a federal government employer. *Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 864 (S.D. Tex. 2010) (stating that Rehabilitation Act "constitutes the exclusive remedy for a federal employee alleging disability-based discrimination") (quoting *Dark v. Potter*, 293 F. App'x 254, 258 (5th Cir. 2008)). Under the Rehabilitation Act, the definition of "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 29 U.S.C. § 705(9); 45 C.F.R. § 84.3; *see also EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 614 n.5

6

(5th Cir. 2009) (stating that ADA and Rehabilitation Act have the same definition of disabled). Having an impairment is insufficient to make one disabled under the statute; a plaintiff also must allege that the impairment substantially limits a major life activity. *See Chevron*, 570 F.3d at 614. The implementing regulations provide a non-exhaustive list of major life activities, which include "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii).

Although Plaintiff states that she suffers from chronic anxiety, she does not allege that this condition substantially limits a major life activity. *See Payne v. Midcrown Pavilion Apartments*, No. SA-19-CV-00407-FB, 2021 WL 3813378, at *12 (W.D. Tex. Aug. 26, 2021) (granting Rule 12(c) motion when plaintiff alleged he suffered from schizoaffective disorder but did not explain how it impaired his life activities); *Houston v. DTN Operating Co.*, No. 4:17-CV-00035, 2017 WL 4653246, at *3 (E.D. Tex. Oct. 17, 2017) (granting motion to dismiss when plaintiff did not allege how mental illness substantially limited a major life activity). The Court therefore recommends that Plaintiff's claims under the Rehabilitation Act should be dismissed.

### C. Race Discrimination

Plaintiff alleges that Defendant discriminated against her by denying her training opportunities, releasing her from an assignment, scrutinizing her work performance, and terminating her employment. Defendant argues that only Plaintiff's termination constitutes an "adverse employment action," and Plaintiff has not plausibly alleged that she was terminated because of her race.

The Court agrees with Defendant that the only adverse employment action Plaintiff alleges is her termination. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) ("Adverse employment actions include only ultimate employment decisions such as hiring,

7

granting leave, discharging, promoting, or compensating."). Changes in work assignments and poor performance reviews do not constitute ultimate employment decisions. *See Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 824 (5th Cir. 2019) (holding that poor performance reviews are not ultimate employment decisions); *Lester v. Sec'y of Veterans Affairs*, 514 F. Supp. 2d 866, 875 (W.D. La. 2007) (holding that job rotation was not ultimate employment decision); *Wayne v. Dallas Morning News*, 78 F. Supp. 2d 571, 584 (N.D. Tex. 1999) (holding that withholding work assignments was not ultimate employment decision). Although denial of a training opportunity may constitute an adverse employment action where the training has "a strong, direct connection" to an employee's "job duties, compensation, or benefits," *Rahman v. Exxon Mobil Corp.*, 56 F.4th 1041, 1046 (5th Cir. 2023), Plaintiff has alleged no such connection. The Court finds that Plaintiff has not stated a claim of race discrimination for actions other than her termination.

To survive a Rule 12(b)(6) motion, a plaintiff need not make out a prima facie case of discrimination under the *McDonnell Douglas* framework. *Cicalese*, 924 F.3d at 767. Still, "although plaintiffs do not have to submit evidence to establish a prima facie case of discrimination at this stage, they must plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make their case plausible." *Id.* (cleaned up).

A plaintiff may establish discriminatory motive with direct or circumstantial evidence. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). Direct evidence includes "any statement or written document showing a discriminatory motive on its face." *Wallace v. Performance Contractors, Inc.*, 57 F.4th 209, 220 (5th Cir. 2023). Because direct evidence is rare, plaintiffs ordinarily use circumstantial evidence to establish their claims. *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). When a plaintiff builds a case on circumstantial evidence, a court analyzes the plaintiff's claim under the framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff must show that she (1) is a member of a protected class; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was treated less favorably because of her membership in a protected class than were other similarly situated employees who were not members of the protected class. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

The Court first considers whether Plaintiff has alleged discriminatory intent based on direct evidence. Plaintiff alleges that her on-duty supervisor, Alex Greenberg, "screamed at the plaintiff in the FEMA Joint Field Office to sit some where else besides in front of him" and made "racially derogatory comments towards her regarding things needing to be segregated." Dkt. 19 at 3. But Plaintiff alleges these facts in the context of her denial for "off-site training" in June 2017 and does not connect Greenberg to the decision to terminate her employment, which was made by Plaintiff's supervisor Candita Sabavala. Dkt. 19 at 3. The Court finds that these allegations are insufficient to allege discriminatory intent for Plaintiff's termination.

Nor has Plaintiff alleged a claim based on circumstantial evidence. Plaintiff does not allege that she was treated differently from employees of other races. Instead, she alleges that she was treated differently from employees without disabilities who had not engaged in protected activity. In the absence of other allegations supporting an inference of discrimination, the Court finds that the alleged discriminatory statement alone does not move Plaintiff's claim "across the line from conceivable to plausible." *Newell v. Acadiana Plan. Comm'n Inc.*, --- F. Supp. 3d ----, No. 6:20-CV-01525, 2022 WL 15449536, at *4 (W.D. La. Oct. 25, 2022) (granting motion to dismiss when plaintiff alleged discriminatory statements unconnected to her termination and did not allege that she was treated less favorably than similarly situated employees).

**D. Racially Hostile Work Environment**

Along with Greenberg's alleged discriminatory statement, discussed above, Plaintiff alleges that Sabavala harassed, bullied, reprimanded, and scrutinized her work performance. Defendant contends that Plaintiff's allegations are insufficient because "[t]hese allegations relate to common workplace occurrences within FEMA's discretion as Plaintiff's employer" and Plaintiff has not alleged that any hostility was because of her race. Dkt. 17 at 20.

"A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment." *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 328 (5th Cir. 2009). In order to state a hostile work environment claim, a plaintiff must plead facts showing that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on her protected status; (4) the harassment affected a term, condition, or privilege of employment; and (5) defendant knew or should have known about the harassment and failed to take remedial action. *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002). Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

Plaintiff has not alleged that any workplace hostility she suffered was based on her race. Plaintiff alleges that Sabavala's actions were motivated by her disability and prior protected activity, not by her race. The Court also concludes that, under binding precedent, Greenberg's statement alone is insufficient to state a claim for a hostile work environment. "[A]n isolated incident of verbal harassment must be extremely severe to change the terms and conditions of the

victim's employment." *EEOC v. U.S. Drug Mart, Inc.*, No. EP-21-CV-00232-FM, 2022 WL 18539781, at *8 (W.D. Tex. Oct. 18, 2022). The Fifth Circuit has recognized a racially hostile work environment claim only in the context of "extraordinarily offensive racial epithets." *Id.* (citing *Woods v. Cantrell*, 29 F.4th 284, 285-86 (5th Cir. 2022)). Greenberg's alleged statement does not rise to the severe level of the epithet in *Woods*, 29 F.4th at 285. The Court finds that Plaintiff has failed to state a claim for a racially hostile work environment.

### E. Retaliation

Plaintiff's retaliation claim mirrors her racial discrimination claim: She alleges that Defendant retaliated against her for engaging in protected activity by denying her training opportunities, releasing her from an assignment, scrutinizing her work performance, and terminating her employment. Defendant again argues that only Plaintiff's termination is an adverse employment action, and Plaintiff has not plausibly alleged that she was terminated because of her protected activity.

To state a claim for retaliation, an employee must allege that (1) she engaged in an activity protected by the statute, (2) her employer took an adverse employment action against her, and (3) there is a causal connection between the protected activity and the adverse action. *Feist v. Louisiana, Dep't of Justice*, 730 F.3d 450, 454 (5th Cir. 2013). Unlike discrimination claims, "adverse actions" for retaliation claims are "not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). Instead, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 57. Actions such as "petty slights or minor annoyances that often take place at work and that all employees experience" are not actionable. *Id.* at 68.

Plaintiff alleges that she first contacted an Equal Employment Opportunity Counselor on June 26, 2017, and filed a formal complaint on August 11, 2017. Dkt. 19 at 1. Defendant does not dispute that Plaintiff has satisfied the first element by alleging that she contacted an EEOC counselor and filed a formal complaint.

Considering the second requirement, the Court finds that Sabavala's alleged actions in requiring Plaintiff to send her emails twice a day and giving her a poor performance review do not rise to the level of adverse employment actions. *See Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (disciplinary actions in the form of reprimands do not constitute adverse employment actions); *Obondi v. UT Sw. Med. Ctr.*, No. 3:15-CV-2022-B, 2017 WL 2729965, at *14 (N.D. Tex. June 23, 2017) (holding that increasing employee workload, micromanaging, and negative performance review were not adverse employment actions). Nor does Plaintiff's claim that she was denied training opportunities state an adverse employment action. Plaintiff alleges that she was denied a training opportunity on June 14, 2017, before she engaged in protected activity, and states no facts in support of her claim that she was denied a training opportunity on August 1, 2017. Again, only Plaintiff's termination constitutes an adverse employment action.

The final element of a retaliation claim is a causal connection between the protected activity and the adverse action. Plaintiff was terminated on September 27, 2017. *Id.* at 2. Defendant argues that Plaintiff fails to plead a causal connection between the protected activity and the adverse action because Plaintiff relies on timing alone, and three months elapsed between when she first contacted the EEOC and her termination. But proximity of up to four months may show a causal link without more evidence. *See Lopez v. Kempthorne*, 684 F. Supp. 2d 827, 894 & n.60 (S.D. Tex. 2010) (collecting cases). The Court concludes that Plaintiff has sufficiently alleged causation through temporal proximity at this stage.

## IV. Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART and DENY IN PART** Defendant's Motion to Dismiss (Dkt. 17). The Court recommends that the District Court **DENY** the motion as to Plaintiff's retaliation claim for her termination and **GRANT** the motion as to all of Plaintiff's other claims. If the District Court accepts this recommendation, only Plaintiff's retaliation claim for termination of her employment will remain.

It is **FURTHER ORDERED** that this case be **REMOVED** from this Magistrate Judge's docket and **RETURNED** to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 27, 2023.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE